UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 04-40106 |
|  | \* |  |
| Plaintiff, | \* |  |
|  | \* |  |
| -vs- | \* | MEMORANDUM OPINION |
|  | \* | AND ORDER |
| JERRY MEDICINE HORN, | \* |  |
|  | \* |  |
| Defendant. | \* |  |
|  | \* |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jerry Medicine Horn ("Medicine Horn") filed a pro se motion for compassionate release pursuant to the First Step Act.[1] (Doc. 144.) The Assistant Federal Public Defender (FPD) appointed to represent individuals who file pro se pleadings seeking relief under the First Step Act submitted a supplement in support of Medicine Horn's motion for compassionate release. (Doc. 150.) The government opposes the motion. (Doc. 153.)  A reply was submitted by the FPD. (Doc. 155.)  For the following reasons the motion is denied.

## BACKGROUND

On November 17, 2004, Medicine Horn was charged in a Superseding Indictment with four counts of sexual abuse. (Doc. 23.)  At trial he was convicted of one count of aggravated sexual abuse (18 U.S.C. § 2241(a)) and one count of sexual abuse of a minor (18 U.S.C. § 2243(a)). The victim was EFH. Medicine Horse was acquitted of one count of aggravated sexual abuse and one count of sexual abuse of another minor, CC.  During the trial the government presented additional evidence pursuant to Federal Rule of Evidence 413 that Medicine Horn had sexually assaulted two other women, SA and AP. Medicine Horn testified at trial and admitted having sex with SA but he claimed it was consensual between them. He denied having sex with EFH, CC and AP.

---

[1] Medicine Horn also has a pending motion requesting that the Court amend his judgment to reflect a "strong recommendation" for six months in a halfway house and six months in home confinement at the end of his prison term. (Doc. 142.)

Medicine Horn was sentenced to 240 months in prison on Count One and 180 months on Count Two, to be served concurrently, followed by five years of supervised release on Count One and three years on Count Two, to run concurrently. (Doc. 97.) Restitution in the amount of $737.52 was ordered to reimburse the minor victim's mother for lost wages and costs to transport her daughter to receive treatment for various issues resulting from the offense.

Medicine Horn is currently incarcerated at the correctional institution in Seagoville, Texas (FCI Seagoville). He has served almost 16 years of his sentence. His projected release date is December 22, 2021. Medicine Horn is 42 years old.

On July 13, 2020, Medicine Horn filed a letter asking the Court to modify his sentence. (Doc. 144.) He filed a supplement on August 31, 2020 showing that he tested positive for COVID-19 in June 2020. (Doc. 145.) Medicine Horn's motion was re-classified as a motion for compassionate release, which triggered the process for handling such motions set forth in Standing Order 20.06. The supplemental briefs subsequently filed by the FPD explain that Medicine Horn suffers from a number of medical problems, including obesity, abnormal kidney function, hypercholesterolemia, headaches, heartburn, and chondromalacia of patella (runner's knee). (Doc. 150.) Medicine Horn argues that being incarcerated makes him particularly vulnerable to COVID-19. In support of this argument, he cites and attaches declarations from medical professionals.[2] To avoid this increased risk of contracting COVID-19 again and developing serious complications, Medicine Horn asks the Court to reduce his sentence to time served and a period of home confinement as a condition of supervised release.[3]

---

[2] *See* Declaration of Dr. Chris Beyrer, Director of the Center for Public Health and Human Rights and Johns Hopkins (Doc. 150-1, "Beyrer Decl."); Declaration of Dr. Jonathan Golob, Assistant Professor at University of Michigan School of Medicine (Doc. 150-2, "Golob Decl."); Declaration. of Dr. Jaimie Meyer, Assistant Professor at Yale School of Medicine (Doc. 150-3, "Meyer Decl.").

[3] The Second Circuit has described "compassionate release" as a "misnomer" because the statute "in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). "A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." *Id.*

According to the BOP website, as of November 19, 2020, there were eighteen inmates and one staff member at FCI Seagoville who are known to be currently positive for COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. Four inmates have died of COVID-19. (*Id.*) Thirty staff members and 1,274 inmates have recovered from COVID-19. *Id.* Medicine Horn is one of the recovered inmates.[4] A BOP Health Services Administrative Note dated July 29, 2020 provides, in part:

> Patient has been in isolation after a positive COVID-19 test on 06/30/20. Patient's chart reviewed, as well as symptom and temperature logs. Patient has been afebrile for > 24 hours. At least 10 days have passed since the patient's first symptoms or positive test. The patient is not severely immunocompromised and did not have a severe illness requiring hospitalization.
> Patient meets CDC Criteria for release from isolation and the ICD code will be resolved.

(Doc. 147 at p. 446.)

## DISCUSSION

Title 18, § 3582(c)(1)(A)(i), known as the "compassionate release provision" of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[5]

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to passage of the First Step Act, compassionate release requests came to the Court "upon motion of the Director of the Bureau of Prisons." *United*

---

[4] A recent medical record indicates that, on September 28, 2020, Medicine Horn reported he can't get enough air when he tries to take a deep breath. (Doc. 154, p. 1.) He was prescribed an albuterol inhaler for his breathing issues. (*Id.*) This record was submitted to the Court after the government filed its response to Medicine Horn's motion.

[5] 18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Medicine Horn is 42 years old. He would need to be at least 70 years old to qualify for compassionate release consideration under Section (ii).

3

*States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020). Now, a defendant may bring his or her own motion with the Court if administrative remedies have been exhausted. *Id.* at 744.

## I. Administrative Exhaustion

A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That requirement is satisfied here. On May 15, 2020, Medicine Horn submitted a request for home confinement to the warden at FCI Seagoville, which was rejected on May 22, 2020. (Doc. 144 at p. 1.) He submitted a new request for a reduction in sentence to the warden on September 9, 2020. (Doc. 149.) As more than thirty days have elapsed from the date that Medicine Horn submitted his requests to the warden, the Court has jurisdiction to consider the motion. *See United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request); *United States v. Harris*, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (reversing district court's dismissal for failure to exhaust after government conceded that defendant was not required to completely exhaust the administrative remedy process after warden denied his compassionate release request).

## II. Extraordinary and Compelling Reasons

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent with applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Congress did not define what constitutes "extraordinary and compelling reasons." Congress elsewhere required the Commission to issue a policy statement "regarding . . . the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t). Since the passage of the First Step Act, the Sentencing Commission has not yet updated its policy statements related to compassionate release, and the Sentencing Commission has not clarified what "extraordinary and compelling might mean," under the First Step

4

Act.[6] *Rodd*, 966 F.3d at 746. Thus, the Commission's Guidelines, formulated before the First Step Act was passed and well before the COVID-19 pandemic, still address motions for compassionate release being considered by the BOP Director. Those Sentencing Guidelines provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment "if, after considering the factors set forth in 18 U.S.C. 3553(a)," the district court determines that –

>  (1)
>    (A) extraordinary and compelling reasons warrant the reduction; or
>
>    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>  (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

As noted by the Eighth Circuit in *Rodd*, 966 F.3d at 746–47, the commentary to § 1B1.13 identifies four categories that constitute "extraordinary and compelling reasons warrant[ing] the [sentence] reduction," as that term appears in U.S.S.G. § 1B1.13(1)(A):

> (A) <u>Medical Condition of the Defendant</u>.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis. of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—

---

[6] In *Rodd*, the Eighth Circuit observed that since the Sentencing Commission lacks a quorum to amend the Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to compassionate release motions brought by defendants in the near future. *Rodd*, 966 F.3d at 746 n.7 (citing *United States v. Beck*, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)).

>    (I) suffering from a serious physical or medical condition,
>    (II) suffering from a serious functional or cognitive impairment, or
>    (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from Which he or she is not expected to recover.
>
> (B) <u>Age of the Defendant</u>.  The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) <u>Family Circumstances</u>.
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) <u>Other Reasons</u>.  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1(A)-(D).

The Eighth Circuit has declined to address whether district courts are bound by the Sentencing Commission's examples in this policy statement when considering a prisoner's compassionate release motion under the First Step Act.  In *Rodd*, the Eighth Circuit noted that "[w]hile some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." *Rodd*, 966 F.3d at 745.  The Court said it wasn't necessary to decide whether or not U.S.S.G. § 1B1.13 applies because the district court had assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons making him eligible for compassionate release under U.S.S.G. § 1B1.13, and still denied his motion after considering the § 3553(a) sentencing factors.  *Id.* at 747–48.

In *United States v. Brown*, 411 F.Supp.3d 446 (S.D. Iowa 2019), the district court judge, Judge Robert Pratt, explained how some district courts have concluded they should rely only on the Sentencing Commission's pre-First Step Act guidelines regarding compassionate release, while other district courts also look to the BOP Program Statement written for the old law, and will only grant a motion for compassionate release under the same circumstances as the BOP would have prior to the First Step Act. *Id.* at 450. Judge Pratt described why it is his opinion that Congress intended to increase the use of compassionate release, and by amending § 3582 to allow defendants to motion district courts directly for compassionate release even after the BOP denies their petition, Congress intended to give district judges more discretion "to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* at 451.

In this district, Judge Lange also has held that district courts are not limited by circumstances described in U.S.S.G. § 1B1.13, even if it applies to motions for compassionate release brought under the First Step Act. *See United States v. Dillabaugh*, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (holding that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described").

The Second Circuit is the only circuit that has addressed the issue. That court recently ruled that compassionate release motions brought by prisoners pursuant to the First Step Act are not limited by the guidance in U.S.S.G. § 1B1.13. *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020). After stating all of the reasons for its conclusion, including the history and text of the First Step Act and Guideline § 1B1.13, the Second Circuit stated:

> For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*Brooker*, 976 F.3d at 237.

This Court agrees with the reasoning of Judge Pratt, Judge Lange and the Second Circuit, and holds that a district court may use its discretion when it is considering the "extraordinary and compelling reasons" for a compassionate release. With the understanding that it is not limited by

Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance. *See Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release).

Medicine Horn first argues that his health conditions and incarceration during the COVID-19 pandemic are "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13, Application Note 1(D). Compassionate release may be appropriate under subsection (D) where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, application note 1(D). This final provision is often called the "catch-all" provision. In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id*. But now that the First Step Act allows inmates to move the Court for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. Judge Schreier recently noted that "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020.) In *Morehouse*, Judge Schreier considered the defendant's argument that his circumstances warranted relief under this "catch-all" provision in application note 1(D) because "his medical conditions put him at high-risk if he contracts COVID-19." *Id*. Finding that the defendant's medical conditions were being controlled and that the BOP's response to the pandemic at the Yankton FPC was adequate,[7] Judge Schreier held that the defendant's circumstances did not warrant a sentence reduction under U.S.S.G. § 1B1.13, application note 1(D). *Id.* at *3-4

Judge Lange has also considered whether health issues, combined with the COVID-19 pandemic generally, constitute extraordinary and compelling reasons for compassionate release under the "catch-all" phrase in U.S.S.G. § 1B1.13, application note 1(D). He observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to

---

[7] When Judge Schreier issued her opinion, there had been no positive COVID-19 cases at the Yankton FPC. *Morehouse*, 2020 WL 2836188, at *2.

>  grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

*United States v. Frost*, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Adopting this reasoning, this Court concludes that it has discretion to consider whether Medicine Horn's health conditions and being imprisoned during the COVID-19 pandemic present an extraordinary and compelling basis for a sentence reduction. *See also Brooker*, 967 F.3d at 238 (noting that district courts around the country have used the coronavirus pandemic "as a justification for granting some sentence reduction motions").

Concern for Medicine Horn's weight is noted throughout the medical records submitted in this case. The records show he suffers from obesity. (Doc. 147, pp. 33, 44, 125, 129, 235.) He is 72.5 inches tall and the records reflect that his weight fluctuated from approximately 250 to 270 pounds from 2014 through 2018. One medical record lists Medicine Horn's BMI as ranging from 35.0 to 36.9 on various dates from 2013 to 2016. (Doc. 147 at pp. 73-74.) In a BOP medical record dated September 16, 2020, Medicine Horn's weight is listed at 247 pounds and his BMI at 32.0-32.9. (Doc. 154 at p. 9.) The Centers for Disease Control and Prevention (CDC) has recognized that individuals suffering from obesity[8] (a BMI of 30 but less than 40) have an increased risk of developing a severe illness if they contract COVID-19. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed October 22, 2020). The CDC also provided a list of medical conditions that "might" put a person at an increased risk of severe illness from COVID-19. *Id.* On October 6, 2020, being overweight (BMI of 25 but less than 30) was added to these medical conditions. *Id.*

---

[8]  The CDC recently added a separate category for "severe obesity," defined as a BMI of 40 or higher.

Medicine Horn also points to medical records indicating he has abnormal kidney function. His BOP records confirm he has had elevated creatinine levels since 2009. (Doc. 147, p. 33, 37, 38, 42, 45 65, 100, 230, 235, 255.) The CDC lists chronic kidney disease as a diagnosis which puts a person of any age at increased risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Medicine Horn contends that his lab results indicate he may suffer from chronic kidney disease. He points out that he has not seen a nephrologist. It is true that chronic kidney disease is a risk factor for complications of COVID-19, but chronic kidney disease is a medical diagnosis, and no such diagnosis appears in the medical records. Though the Court is not qualified to make such a diagnosis, the Court will not ignore the tests reflecting Medicine Horn's long-term abnormal kidney function.[9]

The government does not disagree that obesity places individuals at an increased risk for more severe complications from a COVID-19 infection. The government's response provides, in part:

> [T]he Department of Justice has determined that, during the COVID-19 pandemic, obesity, which increases risk of severe illness due to COVID-19, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), and that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself. DOJ has determined during COVID-19, since obesity is at risk for severe illness, it meets the extraordinary and compelling reason standard.

(Doc. 153, pp. 8-9.) Despite this concession, the government argues that because Medicine Horn contracted COVID-19 and has recovered, the presence of COVID-19 at FCI Seagoville does not constitute an "extraordinary and compelling" reason for his early release. The government also contends that a disparity would result if the Court were to release Medicine Horn after Judge Schreier denied a motion for compassionate release in another case where the defendant had tested

---

[9] The CDC does not list any of Medicine Horn's other diagnosed conditions as putting individuals at a higher risk from COVID-19.

positive for COVID-19 and recovered. *See United States v. Terrell Brunston*, Case No. 18-40145 (Doc. 68). Brunston had chronic medical conditions including Type 2 diabetes, asthma, heart disease with heart failure, hypertension, sleep apnea, epilepsy, and a kidney disorder. *Id.* at 2. It appears he did not suffer from obesity. But the fact that one defendant who has recovered from COVID-19 was denied compassionate release in this district does not categorically bar release of all inmates who have recovered from COVID-19. The decision whether or not to release a defendant is inherently fact-specific and must be decided on a case-by-case basis.

The CDC guidelines and the information presented by the FPD on behalf of Medicine Horn show it is widely recognized that people who are obese, no matter their age, face an increased risk of severe consequences from COVID-19 infection. The information also indicates that Medicine Horn could remain at an elevated risk from COVID-19 notwithstanding the fact that he survived his recent COVID-19 infection. There is no assurance from medical experts that Medicine Horn is immune from catching the virus again. The FPD cites research showing that reinfection can occur, and that people who are reinfected may experience severe symptoms from reinfection. The FPD cites seventeen cases where courts have granted compassionate release even after the defendant tested positive for COVID-19, finding that the continued risk from the virus amounts to an extraordinary and compelling reason for a reduction in sentence.

The Court concludes that compassionate release may be justified for a prisoner such as Medicine Horn, who is obese, has a long history of abnormal kidney function, and is subject to the crowded conditions of confinement where COVID-19 infection rates are high. However, even if Medicine Horn's circumstances constitute an extraordinary and compelling reason supporting compassionate release, the Court will deny the motion after considering the sentencing factors under 28 U.S.C. § 3553(a).

### III. Section 3553(a) Factors

While Medicine Horn may face an increased risk from COVID-19 due to his obesity and abnormal kidney function, those conditions do not warrant a reduction in his term of imprisonment when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be when considering a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) ("the court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a)"). The section

3553(a) factors—especially the need to protect the public and promote respect for the law—weigh heavily against Medicine Horn's request for a sentence reduction. Under section 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," considering:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence[s] and the sentencing range established for–
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]
>
> (5) any pertinent policy statement guidelines [issued by the Sentencing Commission . . .;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As detailed in the government's responsive brief, Medicine Horn's conduct shows he is a danger to the community. Medicine Horn was convicted of sexual abuse of a minor, a serious

offense that weighs against early release.[10] At trial, the Court heard the testimony of four victims of sexual abuse by Medicine Horn. At Medicine Horn's sentencing, the Court described the testimony:

> [T]he evidence of other uncharged sexual conduct and assaults by the defendant was admissible in the trial, and properly so, and it is the Court's view that all four of the victims were credible. Now it is true that as to Counts 3 and 4 the jury did not find the defendant guilty of raping [CC], and the Court having heard the evidence can understand why the jury might have been reluctant to find beyond a reasonable doubt that the defendant was guilty of that, because from the Court's point of view, even though her testimony was completely credible, it was a question of how far her testimony went because she was passed out. Now the circumstantial evidence was very strong, but none-the-less, the jury had to make its own conclusion ultimately as to the circumstantial evidence. The Court's conclusion would have been different than the jury's. Based on the circumstantial evidence the Court would have convicted the defendant on those two counts also, but the Court now is finding on the basis of a preponderance of the evidence and the other two victims that were not the subject of, the assaults against them were not subject to any charges, were, in the Court's view, completely credible, and the jury may have found them to be that way in assisting them in winding up with the finding that they did against the defendant as to Counts 1 and 2.

(Doc. 105, Sentencing Transcript at pp. 13-14.) EFH, the teenage victim of Counts 1 and 2, wrote a letter outlining the distress she suffered due to the rape, and the letter was read at sentencing. (Doc. 105 pp. 21-23.) The Court described Medicine Horn as "a sexual predator" and stated that the public needs to be protected from him. (Doc. 105 at p. 24.) The Court calculated a Sentencing Guidelines range of 235 to 293 months. (Doc. 105 at p. 15). It sentenced Medicine Horn to 240 months' imprisonment to reflect the seriousness of the offense and to provide just punishment for the crime. (Doc. 105 at pp. 24-25.)

       The Court has again carefully reviewed the sentencing factors in 18 U.S.C. § 3553(a) and finds that a sentence of 240 months is still sufficient and not greater than necessary to comply with

---

[10] At sentencing this Court described Medicine Horn's offenses as "most serious." (Doc. 105 at p. 24.)

the purposes of section 3553.[11]  The Court is unwilling to impose the alternative sentences available.  *See*, *e.g.*, *Brooker*, 976 F.3d at 237 (citing 18 U.S.C. § 3582(c)(1)(A)) (noting that district courts can, for example, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place).  Medicine Horn's conduct caused great harm to four victims, a harm they likely continue to struggle with.  His sexual abuse of minors, the predatory nature of his criminal conduct, and his history of sexual misconduct demonstrate that he may pose a significant danger to the community if released.  His 240-month sentence reflects the seriousness of the offense, deters future crimes by Medicine Horn, provides just punishment, and protects the public from further crimes by Medicine Horn.

The Court takes seriously the risk that COVID-19 poses to Medicine Horn, but in balancing all of the factors the Court concludes that reducing Medicine Horn's sentence would stray from the section 3553(a) factors.

## CONCLUSION

The Court finds that a sentence reduction would not be consistent with the section 3553(a) factors.  Accordingly,

**IT IS ORDERED**:

1.  That defendant Jerry Medicine Horn's Motion for Compassionate Release is denied. (Doc. 144.)

2.  That defendant Jerry Medicine Horn's Motion to Amend/Correct his Judgment to reflect a recommendation for six months in a halfway house and six months in home confinement is denied. (Doc. 142.)

---

[11] While in prison Medicine Horn has completed numerous educational programs available through the BOP, he has not had any disciplinary violations since 2016, and he has worked in a number of jobs.  (Doc. 148, pp. 51-59.)  While the Court commends Medicine Horn's efforts toward rehabilitation while in prison, his behavior while incarcerated does not alter the Court's evaluation of the section 3553(a) factors.

Dated this 19th day of November, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
_____